**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Mon Cheri Bridals, LLC | ) | |
| | ) | |
| v. | ) | Case No.    19-cv-2362 |
| | ) | |
| Does 1-464 | ) | Judge: |
| | ) | |
| | ) | Magistrate: |
| | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Mon Cheri Bridals, LLC ("Mon Cheri") hereby files this Complaint for, *inter alia*, trademark infringement, counterfeiting, copyright infringement and related claims against Defendants, on personal knowledge as to Plaintiffs' own activities and on information and belief as to the activities of others:

**The Parties**

1. Mon Cheri Bridals, LLC is a Delaware Limited Liability Company that maintains its principal place of business at 1018 Whitehead Road Extension, Trenton, New Jersey, 08638.

2. Defendants identified on Schedule "A" are all believed to be individuals and unincorporated business associations who, upon information and belief, reside in foreign jurisdictions. The true names, identities and addresses of Defendants are currently unknown.

3. Defendants conduct their illegal operations through fully interactive commercial websites registered with registrars in the United States and other foreign jurisdictions ("Infringing Websites"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to

sell counterfeit products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4. Through their operation of the Infringing Websites, Defendants are directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators and/or suppliers. Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. The identities of these Defendants are presently unknown. If their identities become known, Plaintiff will promptly amend this Complaint to identify them.

**Jurisdiction and Venue**

5. This is an action for trademark counterfeiting and trademark infringement, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, et seq. and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

7. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

## Background Facts

9. Plaintiff is engaged in the business of manufacturing, distributing and retailing high quality bridal gowns and formalwear throughout the world, including within the Northern District of Illinois District (collectively, the "Mon Cheri Products") under the Federally registered trademarks identified in Paragraph 10, below. Defendants' sales of Counterfeit Products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

10. Plaintiff is the owner of all rights, title and interest in and to, inter alia, the SOPHIA TOLLI mark, U.S. Reg. No. 3447055, the JAMES CLIFFORD COLLECTION mark, U.S. Reg. No. 3341157, the CAMERON BLAKE mark, U.S. Reg. No. 2596028, and the LE GALA BY MON CHERI mark, U.S. Reg. No. 2484508 (collectively, "the Mon Cheri Marks"). The registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Mon Cheri Marks constitutes prima facie evidence of

validity and of Plaintiff's exclusive right to use the Mon Cheri Marks pursuant to 15 U.S.C. § 1057(b). Plaintiff also owns common law rights in these and other marks for use in connection with bridal gowns and formalwear. Genuine and authentic copies of the U.S. federal trademark registration certificates for the Mon Cheri Marks are attached as Exhibit 1.

11. Plaintiff's brands, symbolized by the Mon Cheri Marks, are recognized symbols of high-quality bridal gowns and formalwear throughout the world. As detailed below, Plaintiff has been using the Mon Cheri Marks for many years in connection with the advertising and sale of Mon Cheri Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

12. The Mon Cheri Marks have been widely promoted, both in the United States and throughout the world, and are among the world's most famous and widely-recognized trademarks. Consumers, potential consumers and other members of the public and the bridal industry not only associate Mon Cheri Products with exceptional materials, style and workmanship, but also recognize that Mon Cheri Products sold in the United States originate exclusively with Plaintiff.

13. Mon Cheri Products are sold in thousands of retail stores throughout the United States and the world.

14. Plaintiff maintains quality control standards for all Mon Cheri Products. Genuine Mon Cheri Products are distributed through a worldwide network of distributors and retailers, as well as Plaintiff's primary website located at moncheribridals.com ("Website"). Sales of Mon Cheri Products via the Website represent a significant portion of Plaintiff's business. The Website features proprietary content, images and designs exclusive to Plaintiff.

15. The Mon Cheri Marks are highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff and, as a result, Mon Cheri Products bearing the Mon Cheri Marks have generated millions of dollars of sales over the years.

16. The Mon Cheri Marks have never been assigned or licensed to any of the Defendants in this matter.

17. The Mon Cheri Marks are a symbol of Plaintiff's quality, reputation and goodwill and has never been abandoned.

18. Further, Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Mon Cheri Marks. The Mon Cheri Marks have been continuously used and qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

19. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Mon Cheri Marks, including exclusive right to use and license such intellectual property and the goodwill associated therewith.

20. In or around 2018-2019, Plaintiff identified the Mon Cheri Marks on the Infringing Websites designed to resemble authorized retail Internet stores selling genuine Mon Cheri Products that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiff in violation of the Mon Cheri Marks.

21. Defendants' use of the Mon Cheri Marks on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiff.

22. Plaintiff is the owner of all right, title and interest in and to United States Copyright Registration Nos. VA 1-935-286, VA 2-090-095, and VA 2-089-524 ("Mon Cheri Copyrights"). The aforementioned registrations are valid, subsisting, unrevoked and uncancelled. Plaintiff also owns common law rights in these and other copyrights for use in connection with bridal gowns and formalwear. A genuine and authentic copy of the U.S. federal copyright registration certificate for the above-listed Mon Cheri Copyrights is attached hereto as Exhibit 2.

23. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to use and reproduce photographs protected by the Mon Cheri Copyright and to distribute these photographs to the public.

24. In or around 2018-2019, Plaintiff identified photographic images on the Infringing Websites that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiff ("Infringing Images") in violation of the Mon Cheri Copyrights.

25. The Infringing Images Defendants reproduced, displayed and distributed on Defendants' Infringing Websites are the subject of the Mon Cheri Copyrights.

26. Defendants have manufactured, imported, distributed, offered for sale and sold Counterfeit Products, including bridal gowns and formalwear using the Mon Cheri Marks and protected images in violation of the Mon Cheri Copyrights and continue to do so.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Mon Cheri Marks in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the Internet. The Counterfeit Products are not genuine Mon Cheri Products. The Plaintiff did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Website offers shipping to the United States, including Illinois, and,

6

on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants falsely advertise the sale of Mon Cheri Products through the Infringing Websites by stealing and copying Plaintiff's copyrighted images and photographs of Plaintiff's genuine products in violation of the Mon Cheri Copyrights. Furthermore, the Infringing Websites offer live online service and display normal indicia of security protection that would appear on legitimate websites, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Defendants' Infringing Websites appear to unknowing consumers to be legitimate web stores authorized to sell genuine Mon Cheri Products.

29. Defendants also deceive unknowing consumers by using the Mon Cheri Marks without authorization within the content, text, and/or meta tags of the Infringing Websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Mon Cheri Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics so that listings for the Infringing Websites appear at or near the top of relevant search results and misdirect consumers searching for genuine Mon Cheri Products. Furthermore, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are disabled. As such, Plaintiff also seeks to disable the Infringing Websites owned and operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products.

30. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Websites. For example, many of Defendants' names and physical addresses used to register the Infringing Websites are

incomplete, contain randomly typed letters, or fail to include cities or states. Other Infringing Websites use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites on various platforms using the identities listed in Schedule "A" to the Complaint, as well as other unknown fictitious names and addresses. Such registration patterns for new Internet domains are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Websites from being disabled.

31. Upon information and belief, Defendants will continue to register or acquire new domain names for the purpose of selling Counterfeit Goods that infringe upon the Mon Cheri Marks unless preliminarily and permanently enjoined.

32. Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §1114)

33. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

34. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. The mark is highly distinctive and has become universally associated in the public mind with Plaintiffs' Products and related services. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

35. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants'

Counterfeit Products are sold using marks which is identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff products, in or affecting interstate commerce.

36. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill and sales.

37. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a))

38. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

39. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

40. By misappropriating and using the Plaintiff's marks, genuine product images and trade names, Defendants misrepresent and falsely describe to the general public the origin and

9

source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

41. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plainitiff's great damage and injury.

42. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

48. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT THREE
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

49. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

50. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) in obtaining the Copyrights.

51. At all times relevant hereto, Plaintiff has been producer and sole owner of the original photographic images that are the subject of this action and protected by the Copyrights. Among the rights granted to Plaintiff is the exclusive right to market and sublicense the right to copy,

reproduce and display the image. Additionally, Plaintiff is granted the exclusive right to make and control claims related to infringements of copyrights in the image.

52. Defendants have intentionally reproduced, displayed, distributed and made other infringing uses of the protected image, without authorization by Plaintiff.

53. As a result of its conduct, Defendants are liable to Plaintiff for copyright infringement.

54. Defendants knew their acts constituted copyright infringement and Defendant's conduct was willful within the meaning of the Copyright Act.

55. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill.

56. Plaintiff is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of its wrongful conduct. 17 U.S.C. § 504. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

57. In addition, because Defendants' infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

**COUNT FOUR**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES (815 ILCS 510)**

58. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

59. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

60. By misappropriating and using the Plaintiff's mark, genuine product images and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

61. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

62. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*., in that Defendants' use of the Plaintiff's mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

63. Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**Prayer for Relief**

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

(i) using the Plaintiff's marks or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's mark in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of the Plaintiff; and

(ii) passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

(iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv) further infringing the Plaintiff's mark and damaging Plaintiff's goodwill;

(v) competing unfairly with Plaintiff in any manner;

(vi) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the Mon Cheri Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(vii) using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Websites, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

(viii) operating and/or hosting websites at the Infringing Websites and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's mark or any reproduction, counterfeit copy or colorable imitation thereof that is not a

13

genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's mark; and,

(ix) registering any additional domain names that use or incorporate any of the Plaintiff's marks; and

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(i) displaying images protected by the Plaintiff's Copyright in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff's Copyright; and

(ii) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's Copyright or any reproductions, counterfeit copies, or colorable imitations thereof; and,

3. That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

4. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars and domain-name registries or their administrators that are provided with notice

14

of the injunction, cease facilitating access to any or all domain names and websites through which Defendants engage in the sale of Counterfeit Products using the Plaintiff's mark;

5. Entry of an order canceling or, at Plaintiff's election, transferring the Infringing Websites and any other domain names used by the Defendants to engage in their counterfeiting of the Plaintiff's mark at issue to Plaintiff's control so they may no longer be used for illegal purposes;

6. That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Mon Cheri Marks be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

7. In the alternative, that Plaintiff be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiff's mark counterfeited by each Defendant and One Hundred Thousand Dollars (U.S.) and No Cents ($100,000.00) per domain name pursuant to 15 U.S.C. § 1117(d);

8. That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials protected by the Copyright, which are in Defendants' possession or under its control;

9. That the Court enter an order, pursuant to 17 U.S.C. § 504(b), declaring that Defendants hold in trust, as constructive trustees for the benefit of Plaintiff, all profits received by defendant from its reproduction, distribution, display or other infringing uses of the photographic images protected by the Plaintiff's Copyright, and requiring Defendants to provide Plaintiff a full and complete accounting of all profits received by Defendants;

10. That the Court order Defendants to pay damages to Plaintiff, including an award of actual damages suffered by Plaintiff, as a result of the infringements and all profits of defendant that are attributable to those infringements, pursuant to 17 U.S.C. § 504(b);

11. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

12. Grant Plaintiff such other and further legal relief as may be just and proper.

Respectfully submitted,

By:     s/David Gulbransen
David Gulbransen
Attorney of Record

David Gulbransen (#6296646)
Law Office of David Gulbransen
805 Lake Street, Suite 172
Oak Park, IL 60302
(312) 361-0825 p.
(312) 873-4377 f.
david@gulbransenlaw.com